O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA MOSQUEDA,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. CV 11-8462-JPR<br><br>MEMORANDUM OPINION AND ORDER REVERSING COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |

**I.  PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits.  The parties filed a Joint Stipulation on July 23, 2012.  The Court has taken the Joint Stipulation under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

## II. BACKGROUND

Plaintiff was born on July 9, 1963. (Administrative Record ("AR") 118.) She has a third-grade education. (AR 127.) Plaintiff worked in a nursery from 1996 until March 2007, when she was injured on the job. (AR 53-54; 123.) She has not worked since then. (AR 53.)

On April 22, 2008, Plaintiff filed an application for disability insurance benefits, alleging that she had been unable to work since March 15, 2007, because of pain in her neck and right back, shoulder, and hand. (AR 112, 122.) After Plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). (AR 81.) An initial hearing was held on March 3, 2010, at which Plaintiff appeared with counsel and a translator and testified on her own behalf. (AR 49-60.) A vocational expert also testified. (AR 60-65.) In a decision issued on March 26, 2010, the ALJ determined that Plaintiff was not disabled. (AR 42.) On August 23, 2011, the Appeals Council denied Plaintiff's request for review. (AR 7-15.) This action followed.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such

evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is

not disabled and the claim is denied. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, disability is established and benefits are awarded. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  in the economy. § 404.1520(a)(4)(v). That determination
2  comprises the fifth and final step in the sequential analysis.
3  Id.; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.
4      B.   The ALJ's Application of the Five-Step Process
5       At step one, the ALJ found that Plaintiff had not engaged in
6  any substantial gainful activity since March 15, 2007, the onset
7  date of her alleged disability. (AR 35.) At step two, the ALJ
8  concluded that Plaintiff had the severe impairments of right
9  shoulder impingement, disc protrusion with cord compression,
10 ulnar neuropathy, and depression. (Id.) At step three, the ALJ
11 determined that Plaintiff's impairments did not meet or equal any
12 of the impairments in the Listing. (Id.) At step four, the ALJ
13 found that Plaintiff retained the RFC to perform a range of light
14 work[2] with certain additional limitations. (AR 36.) He also
15 found that she was "not able to communicate in English, and is
16 considered in the same way as an individual who is illiterate in
17 English."[3] (AR 41.) The ALJ concluded that Plaintiff was unable
18 to perform her past relevant work as a horticultural worker.

---

[2] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may involve occasional walking or standing. § 404.1567(a)-(b).

[3] In her benefits application, Plaintiff apparently wrote that she can "read and understand English" and could "write more than [her] name in English." (AR 121.) Because these statements are contrary to the ALJ's finding and because the Commissioner does not rely on them, the Court has not considered them.

(<u>Id.</u>)  At step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (AR 54.)  The ALJ agreed with the vocational expert that Plaintiff could perform such "representative occupations" as an electrical accessories assembler (Joint Stip. Ex. DOT; DOT 729.687-010, 1991 WL 679733), which is "light, unskilled work," and a film touch-up inspector, DOT 726.684-050, 1991 WL 679601, which is "sedentary, unskilled work."  (AR 42.)  Accordingly, the ALJ determined that Plaintiff was not disabled.  (<u>Id.</u>)

**V.   DISCUSSION**

Plaintiff contends that the ALJ improperly found that she could perform the electrical-accessories-assembler job because it has a Language Level 2 requirement and she is illiterate.  She also contends that because the film touch-up inspector position is sedentary and is the only other job the ALJ noted that she was capable of performing, she must be found disabled under the Medical-Vocational grids, 20 C.F.R. Part 404, Subpart P, Appendix 2.  Plaintiff's first claim is correct.  She must also prevail on her challenge to the ALJ's finding that the availability of the film touch-up inspector position precluded a finding of disability, although not for the reasons she contends.

Because Plaintiff is illiterate, the ALJ clearly erred in finding that she could perform the electrical-accessories-assembler job, which requires Language Level 2 skills.  <u>See</u> (Joint Stip. Ex. DOT.)  Language Level 2 encompasses the following skills:

> READING: Passive vocabulary of 5000-6000 words.  Read at
>    rate of 190-215 words per minute.  Read adventure stories

>    and comic books, looking up unfamiliar words in
>    dictionary for meaning, spelling, and pronunciation.
>    Read instructions for assembling model cars and
>    airplanes.
>    WRITING: Write compound and complex sentences, using
>    cursive style, proper end punctuation, and employing
>    adjectives and adverbs.
>    SPEAKING: Speak clearly and distinctly with appropriate
>    pauses and emphasis, correct punctuation, variations in
>    word order, using present, perfect, and future tenses.

DOT App. C, 1991 WL 688702 ("Components of the Definition Trailer"); (Joint Stip. Ex. DOT).

   Although a claimant is not per se disabled simply because she is illiterate, see Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001), the ALJ must provide an explanation to support any finding that the claimant can perform a job that requires certain language skills. See id. Here, the ALJ did not do so. Nor did the vocational expert. Indeed, the expert erroneously testified that her finding that Plaintiff could perform the electrical-accessories-assembler job was consistent with the job description in the Dictionary of Occupational Titles (AR 61), even though the ALJ's hypothetical had instructed her to assume that the claimant "does not have the ability to communicate in English" (AR 60). Accordingly, the ALJ erred in finding that Plaintiff could perform that job.[4]

---

[4] The Commissioner argues that because Plaintiff spent many years working at a nursery, her illiteracy does not impede her ability to work. (See Joint Stip. at 14.) But horticultural

1     Plaintiff contends that because the only other job mentioned
2 by the ALJ, film touch-up inspector, was a sedentary position,
3 she must be found disabled under the grids.  That is not so.
4 Plaintiff has not challenged the ALJ's finding that she had an
5 RFC that permitted her to perform some light work.  Those with
6 Plaintiff's characteristics who can perform some light work are
7 not disabled under the grids.  See SSR 83-12, 1983 WL 31253
8 (holding that if a claimant's "exertional level falls between two
9 rules which direct opposite conclusions . . . and the
10 individual's exertional limitations are somewhere 'in the middle'
11 in terms of the regulatory criteria for exertional ranges of
12 work," the claimant is not automatically disabled; rather,
13 vocational expert testimony "is advisable").  The case relied
14 upon by Plaintiff to support her position, Distasio v. Shalala,
15 47 F.3d 348, 349-50 (9th Cir. 1995), is readily distinguished.
16 In it, the vocational expert apparently testified that the
17 claimant could perform only sedentary work.  Id. at 349.  Here,
18 the vocational expert did not testify to any such thing, and she
19 also never testified that the jobs she listed were the only ones
20 Plaintiff could perform.  Indeed, the ALJ specifically found that
21 the two jobs it named were simply "representative" of other jobs
22 in the light and sedentary categories that Plaintiff could
23 perform.  (AR 42.)
24     Nonetheless, the ALJ's decision must be reversed and the
25 matter remanded for further proceedings because the record is not

---

27 worker requires only Language Level 1 skills, not Language Level 2.
28 See DOT 405.687-014, 1991 WL 673330.  Thus, the Commissioner's argument is not convincing.

clear that the film touch-up inspector job exists in significant numbers in either the regional or the national economy. The vocational expert testified that 160 such jobs existed regionally and 1463 nationally. (AR 61.) She also appears to have testified that depending upon the amount of reaching involved in any particular job, "that would erode the job bases." (AR 65.)

In Beltran v. Astrue, 676 F.3d 1203, 1207 (9th Cir. 2012), the Ninth Circuit recently held that 135 regional and 1680 national jobs were not "significant numbers." If 1680 is not a significant national number, then surely 1463 is not either. Although 160 is greater than 135, the vocational expert appears to have implied that the actual number of film touch-up jobs Plaintiff could perform might be less than that. Accordingly, because it is not at all clear that significant numbers of film touch-up inspector jobs exist that Plaintiff could perform, the ALJ's finding on that score must be reversed as well.

**VI. CONCLUSION**

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Remand for further proceedings is appropriate "if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) (explaining that "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

9

Here, upon remand, the ALJ may explore with a vocational expert whether there are other "representative" jobs Plaintiff can perform and whether they exist in significant numbers in the economy.  Accordingly, remand, not an award of benefits, is the proper course in this case.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 3, 2012             _____
                                  JEAN P. ROSENBLUTH
                                  U.S. Magistrate Judge